THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TERESA JACKSON,

    Plaintiff,                      CASE NO.:

v.

SUNTRUST BANK,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff, TERESA JACKSON, by and through the undersigned counsel, and sues Defendant, SUNTRUST BANK, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

**INTRODUCTION**

1. The TCPA was enacted to prevent companies like SUNTRUST BANK (hereinafter "Defendant") from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

1

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6.   Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7.   The current principal place of business of Defendant is in Atlanta, Fulton County, Georgia. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(1), as it is the judicial district in the State where the Defendant resides.

## FACTUAL ALLEGATIONS

8.   Plaintiff is a natural person, and citizen of the State of Alabama, residing in Lauderdale County, Alabama.

9.   Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10.   Defendant is a corporation with its principal place of business located at 303 Peachtree Street North East, Atlanta, Georgia, 30308.

11.     Defendant called Plaintiff approximately one-hundred fifty (150) times in an attempt to collect an alleged debt.

12.     On several occasions over the last four (4) years, Plaintiff instructed Defendant's agent(s) to stop calling her cellular telephone.

13.     Upon information and belief, some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that her knew it was an autodialer because of the vast number of calls she received and because when she answered a call from the Defendant, she would hear a pre-recorded message advising her that the call was an attempt to collect the debt, before a live agent/representative of the Defendant would answer.

14.     None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

15.     Furthermore, each of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

16. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (256) ***-1159, and was the called party and recipient of Defendant's calls.

17. Defendant placed an exorbitant number of automated calls to Plaintiff's cellular telephone (256) ***-1159 in an attempt to collect an alleged debt.

18. The autodialer calls from Defendant came from telephone numbers including but not limited to (888) 893-1773, (877) 654-9211, (888) 886-0696, and when those numbers are called a pre-recorded voice answers with the following, or a similar message: "thank you for calling Suntrust Bank. Para Español, marque nueve. To use our touchtone system, press *77 now. Please say or enter the full 16 digit card number."

19. In or about April of 2017, Plaintiff answered a call from Defendant to her aforementioned cellular telephone number, held the line and was eventually connected to a live representative, and informed an agent/representative of Defendant, that she was unable to make payments due to a recent surgery, and asked the agent/representative if there was any way to make the calls stop, to which the agent/representative of Defendant replied that they could make the automated calls to Plaintiff's aforementioned cellular telephone number stop.

5

20. During the aforementioned October of 2012 phone call with Defendant, Plaintiff unequivocally revoked any express consent Defendant had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

21. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

22. Each call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

23. Additionally, on or about May 12, 2017, due to continued automated calls to her aforementioned cellular telephone number from the Defendant, Plaintiff again answered a call from Defendant, met with an automated message, held the line and was eventually connected to a live representative, and informed the agent/representative of Defendant that she had previously informed them not to call her cellular phone, and again demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

24. Furthermore, on or about May 16, 2017 Plaintiff again answered a call from Defendant, met with an extended pause, was eventually connected to a live

agent of Defendant, and demanded that they stop calling her aforementioned cellular telephone number

25. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call her aforementioned cellular telephone number.

26. On at least three (3) separate occasions, Plaintiff has either answered a call from Defendant or returned a call to Defendant regarding her account, held the line to be connected to a live representative, and demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

27. The Plaintiff's requests for the harassment to end were calling were ignored.

28. From approximately the four year period prior to the filing of this Complaint, or at such time as will be determined after a thorough review of Defendant's records, Defendant has called Plaintiff's aforementioned cellular telephone on a daily basis, despite Plaintiff's repeated requests for the calls to stop.

29. From approximately the four year period prior to the filing of this Complaint, Defendant has placed approximately one-hundred fifty (150) calls to Plaintiff's aforementioned cellular telephone number. (Please see attached **Exhibit**

"A" representing a non-exclusive call log of twenty-eight (28) calls received from May 4, 2017 through May 16, 2017).

30. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times in the same hour, during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

31. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

32. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

33. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendant, to remove the number.

34. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

35. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

36. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

37. Defendant has had numerous complaints against it from consumers across the country asking to not be called, however Defendant continues to call these individuals.

38. Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant's call list.

39. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

40. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

41. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

42. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the

phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's call.

43. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

44. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

45. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

46. Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

47. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

48. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress and aggravation.

## COUNT I
### (Violation of the TCPA)

49. Plaintiff fully incorporates and re-alleges paragraphs one (1) through forty-eight (48) as if fully set forth herein.

50. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff wished for the calls to stop

51. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Octavio Gomez, Esquire*
Octavio Gomez, Esquire
Georgia Bar No.: 617963
Morgan & Morgan, Tampa, P.A
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
tgomez@forthepeople.com
*Attorney for Plaintiff*